UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GIBRILL and AIDAH MUSTAPHA, § | |
| § | |
| *Plaintiffs,* § | |
| VS. § | CIVIL ACTION NO. 4:12-cv-01924 |
| § | |
| HSBC BANK, USA et. Al, § | |
| § | |
| *Defendants.* | |

## MEMORANDUM AND ORDER

Plaintiffs Gibril and Aidah Mustapha have filed a lawsuit contesting the foreclosure of their home. This controversy has created a tidal wave of litigation over the past five years. Pending now before the Court are the Motion to Dismiss and the Motion to Declare Plaintiffs Vexatious Litigants[1] filed by Defendants, HSBC Bank USA ("HSBC Bank") and Wells Fargo Bank, N.A. ("Wells Fargo") This case has been transferred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B).[2] A hearing was on held on the Motions on October 31, 2012. After considering the Motions, the pleadings, the arguments of the parties, and applicable legal authorities, the Court **GRANTS** the Motion to Dismiss and **DENIES** the Motion to Declare Plaintiffs Vexatious Litigants.

### Background

This case has a complicated procedural history. In an effort to avoid foreclosure and eviction, the Mustaphas have appeared in seven different courts over the past two-

---

[1] Dkt. 19, 20.
[2] Dkt. 9. As discussed below, the Mustaphas have previously appeared before this Court. The Mustaphas filed this most recent lawsuit, and the case was assigned to the docket of United States District Judge Gray Miller. Defendants moved to transfer this case (Dkt. 8) for reasons of continuity and judicial economy. The Mustaphas did not file a response to the motion to transfer, and the Motion was subsequently granted by Judge Miller.

and-a-half years, including, but not limited to, the United States Bankruptcy Court for the Southern District of Texas, the United States District Court for the Southern District of Texas, the Court of Appeals for the Fourteenth District of Texas, and the Supreme Court of Texas. All of these lawsuits relate to the same property—23922 Verngate, Spring, Texas, 77373 (the "Property")—its associated loan documents, and foreclosure.

In 2006, Aidah Mustapha executed an Adjustable Rate Note for $96,900.00 ("the Note").[3] Aidah Mustapha also executed a Deed of Trust to secure payment of the Note, while her husband, Gibrill Mustapha, executed the Deed of Trust *pro forma* to perfect the lien. Between January 25, 2007 and July 5, 2007, the Mustaphas made seven payments on the Note. After July 2007, the Mustaphas ceased making payments and defaulted on the mortgage. On March 2, 2010, Wells Fargo Bank, N.A., acting as servicer for HSBC Bank USA, N.A., foreclosed on the Property.[4] HSBC then purchased the Property at the foreclosure sale.

Despite their default, the Mustaphas continued to live in and enjoy the benefits of the Property for five years—never paying the mortgage, rent, taxes, or insurance. Two years after the initial foreclosure in 2010, HSBC was finally successful in evicting them from the Property. Since 2007, the Mustaphas have filed multiple proceedings in various federal and state courts. In all, the Mustphas have sued approximately twenty entities (including HSBC and Wells Fargo) and individuals regarding this mortgage and

---

[3] Dkt. 1-3. The Note was executed in favor of MILA, Inc. d/b/a Mortgage Investment Lending Associates Inc.
[4] Bankruptcy Case No. 07-37652-H3-7, Dkt. 34. On June 18, 2010, the United States Bankruptcy Court for the Southern District of Texas found that the Mustaphas executed the Note and Deed of Trust at issue and that the foreclosure was conducted legally.

foreclosure. In almost every instance, the Mustaphas have acted *pro se*—their pleadings, however, reflect an underlying familiarity with the legal process.

I.     **Previous Court Proceedings**

   **A. Bankruptcy Case No. 07-37652-H3-7**

On November 5, 2007, represented by counsel, Aidah Mustapha filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of Texas.[5] At that time, the Mustaphas owed $8,400.92 on the mortgage. Wells Fargo filed a Motion for Relief from Automatic Stay in order to proceed with the foreclosure.[6] On January 4, 2008, United States Bankruptcy Judge Leticia Paul terminated the Automatic Stay.[7]

   **B. Bankruptcy Case No. 10-32153-H3-13**

Wells Fargo foreclosed on the Property on March 2, 2010. On March 15, 2010, Aidah Mustapha filed a *pro se* voluntary petition under Chapter 13 of the Bankruptcy Code, again in the Bankruptcy Court for the Southern District of Texas. On April 29, 2010, Wells Fargo filed a Motion to Annul the Automatic Stay and to Proceed with Eviction.[8] Bankruptcy Judge Paul granted Wells Fargo's motion, finding that the Mustaphas executed the Note and Deed of Trust on the Property and that Wells Fargo

---

[5] Case No. 07-37652-H3-7.
[6] Bankruptcy Case No. 07-37652-H3-7, Dkt. 26.
[7] *Id.* at Dkt. 27.
[8] Bankruptcy Case No. 10-32153-H3-13, Dkt. 25.

properly conducted the foreclosure.[9] The Court dismissed Aidah Mustapha's Chapter 13 case without prejudice on November 4, 2010.

Aidah Mustapha filed the following eight additional motions with the bankruptcy court between September 7, 2010 and December 15, 2011:

1. September 7, 2010, Motion to Vacate Memorandum Opinion,[10] denied September 23, 2010.[11]
2. September 17, 2010, Amended Motion to Vacate Memorandum Opinion,[12] denied October 26, 2010.[13]
3. November 4, 2010, Motion to Reopen Chapter 13 Case,[14] denied November 5, 2010.[15]
4. June 15, 2011, Motion to Reconsider Dismissal of Chapter 13 Case,[16] denied July 7, 2011.[17]
5. September, 16 2011, Motion to Reopen Chapter 13 Case, denied October 17, 2011.[18]
6. October 28, 2011, Amended Motion to Reopen Chapter 13 Case,[19] denied on November 23, 2011.[20]
7. December 15, Motion to Reopen Chapter 13 Case,[21] denied **with prejudice** on January 24, 2012.[22]

---

[9] Bankruptcy Case No. 10-32153-H3-13, Dkt. 34-35.
[10] *Id.* at Dkt. 66.
[11] *Id.* at Dkt. 73.
[12] *Id.* at Dkt. 70.
[13] *Id.* at Dkt. 80.
[14] *Id.* at Dkt. 98.
[15] *Id.* at Dkt. 99.
[16] *Id.* at Dkt. 101.
[17] *Id.* at Dkt. 103.
[18] *Id.* at Dkt. 108.
[19] *Id.* at Dkt. 110.
[20] *Id.* at Dkt. 112.
[21] *Id.* at Dkt. 114.
[22] *Id.* at Dkt. 115.

## C. Adversary Proceeding No. 10-3265

On June 16, 2010, while proceeding with the above-listed motions in her Chapter 13 case, Aidah Mustapha also initiated a *pro se* adversary proceeding in the Bankruptcy Court against HSBC, Wells Fargo, Mortgage Investment Lending Association, Countrywide Home Mortgage, Chicago Title Insurance Company, Lone Star Legal Aid Department, B&G Realty Company, Asset Real Estate Appraisals, and Maranatha Financial Services.[23] She also sued brokers Ben Onwucheckwa and Ndubuisi A. Ukandu. Her specific causes of action included: (1) declaratory judgment; (2) claim for injunctive relief; (3) violations of the Home Ownership Equity Protection Act; (4) violations of the Fair Credit Reporting Act; (5) violations of the Truth in Lending Act; (6) violations of the Real Estate Settlement Procedures Act; (7) fraudulent misrepresentation; (8) breach of fiduciary duty; (9) unjust enrichment; (10) civil conspiracy; (11) Civil violations of the Racketeer Influence and Corrupt Organizations Act; (12) an action to set aside an illegal sale by a Trustee; (13) suit to quiet title; (14) violations of the Texas Business and Commercial Code; (15) wrongful foreclosure; (16) usury; (17) predatory lending; (18) unfair debt collection practices; and (19) slander of title. The Bankruptcy Court dismissed this adversary proceeding in its entirety on November 29, 2010, noting it had already dismissed the underlying Chapter 13 proceeding on November 4, 2010.[24] Undeterred, on June 15, 2011, Aidah Mustapha filed

---

[23] Bankruptcy Adversary Proceeding Case No. 10-3265.
[24] *Id.* at Dkt. 13.

a motion to reinstate the adversary proceeding.[25] This motion was denied by the Bankruptcy Court on July 7, 2011.[26]

### D. Forcible Entry and Detainer

HSBC, the owner of the Property after the foreclosure sale, filed a forcible entry and detainer against the Mustaphas in the Justice Court of Harris County. HSBC was awarded a judgment for possession of the Property. The Mustaphas appealed the judgment for possession to the Harris County Court at Law No. 4 on August 6, 2010. On December 8, 2010, the Court entered judgment for possession in favor of HSBC.

The Mustaphas, again acting *pro se,* appealed this judgment to the Court of Appeals for the Fourteenth District of Texas. Their appellant's brief was due April 18, 2011. Despite receiving four extensions of time from the Court of Appeals, the Mustaphas never filed their brief. Accordingly, on January 31, 2012, the Court of Appeals dismissed the Mustaphas' appeal for want of prosecution. Nearly two months later, on March 16, 2012, the Mustaphas filed a motion for extension of time to file their petition for review in the Supreme Court of Texas. The petition for review was denied on April 6, 2012.

### E. Civil Action No. 4:11-cv-0428 in United States District Court

On January 12, 2011, the Mustaphas again filed suit, this time in the 281st Judicial District of Harris County, Texas. Defendants once again included, among others, Wells Fargo and HSBC. On February 2, 2011, HSBC and Wells Fargo removed the case to the

---

[25] *Id.* at Dkt. 23.
[26] *Id.* at Dkt. 24.

United States District Court for the Southern District of Texas, Houston Division. On June 20, 2011, the parties consented, in accordance with 28 U.S.C. § 636(c), to conduct all proceedings before United States Magistrate Judge George C. Hanks, Jr.

Lui O. Akwuruoha appeared as counsel for the Mustaphas until August 1, 2011, when the Court granted his motion to withdraw. The Mustaphas continued *pro se*. In a veritable flurry of allegations, the Mustaphas claimed (i) fraud, (ii) violations of the Texas Debt Collection Act and (iii) violations of the Texas Deceptive Trade Practices Act. Once again, these claims shared a common nucleus, the Property, and stemmed from allegations of wrongful foreclosure.

In their pleadings, the Mustaphas asserted that they fell behind in their mortgage payments in late 2007. According to the Mustaphas, Defendant Wells Fargo Bank offered to modify their loan; however, when the modification papers were delivered, the monthly mortgage payments were higher than before the modification. The Mustaphas' petition stated that in 2008, while the Mustaphas were under "bankruptcy court protection," Defendant Wells Fargo foreclosed on the Property without providing the required foreclosure notices. Their petition also asserted that the "foreclosure was subsequently rescinded and the property returned to the bankruptcy process."[27] In response, Wells Fargo and HSBC contended that the March 2, 2010 foreclosure sale of the Property was valid,[28] pointing to the bankruptcy court's 2010 holding that the

---

[27] Dkt. 1-3, 7.
[28] Dkt. 36, 2.

foreclosure was valid.[29] The Defendants filed a 12(b)(6) Motion to Dismiss, seeking dismissal with prejudice.

This Court found that the Mustaphas' pleadings did not contain facts to support their claims under the Texas Debt Collection Act, the Texas Deceptive Trade Practices Act, or claims for "fraud on the consumer." Pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court issued a Memorandum and Order dismissing the case *with prejudice* on November 22, 2011. The Mustaphas did not appeal the dismissal.

Undaunted, on May 11, 2012, the Mustaphas again brought the current suit against Defendants in state district court.[30] Once again, Defendants have removed this case to federal court. The Mustaphas now ask this Court to again review the foreclosure of this Property. Defendants move for dismissal of this latest case on grounds of *res judicata* and the *Rooker-Feldman* doctrine. In light of the procedural history of this entire matter, they also move for sanctions declaring the Mustaphas vexatious litigants.

## II. The Current Suit is Barred by *Res Judicata*

First, Defendants move for dismissal, arguing that the Mustaphas' claims are barred by *res judicata*. The Court agrees. Claim preclusion, or *res judicata*, is the "venerable legal canon that insures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits." *Proctor & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 (5th Cir. 2004). "The authority of the *res judicata*, with the limitations under which it is admitted, is derived by us from the Roman law and

---

[29] *Id.* at 3; Dkt. 43, 4; Dkt. 4, 3-4.
[30] The case was brought in the 164th Judicial District of Harris County.

the Canonists." *San Remo Hotel, L.P. v. City and County of San Francisco, Cal.*, 545 U.S. 323, 337, 125 S.Ct. 2491, 2501 (2005) (citing *Washington, Alexandria, & Georgetown Steam–Packet Co. v. Sickles,* 24 How. 333, 341, 16 L.Ed. 650 (1861)) (noting that the rule also has its pedigree "[i]n the courts upon the continent of Europe, and in the courts of chancery and admiralty in the United States and Great Britain, where the function of adjudication is performed entire by a tribunal composed of one or more judges . . ."). This rule "has found its way into every system of jurisprudence, not only from its obvious fitness and propriety, but because without it, an end could never be put to litigation." *Id.* at 336-337, 125 S.Ct. 2491, 2501. "'Simple justice' is achieved when a complex body of law developed over a period of years is evenhandedly applied. . . . There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*.'" *Id.* at 345, 125 S.Ct. 2491, 2505-2506 (2005).

"Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94–96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). *Res judicata* applies where "(1) the parties to both actions are identical (or at least in privity); (2) the judgment in the first action is rendered by a court of competent jurisdiction; (3) the first action concluded with a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits." *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000). If these factors are satisfied, then the new claim is barred.

Courts determine whether two suits involve the same claim or cause of action by applying the transactional test, focusing on whether the two cases are based on "the same nucleus of operative facts." *United States v. Davenport*, 484 F.3d 321, 325 (5th Cir. 2007). The nucleus of operative facts defines the claim, rather than the type of relief requested, substantive theories advanced, or types of rights asserted. *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.*, 20 F.3d 663, 665 (5th Cir. 1994). If the case is based on the same nucleus of operative facts, then the first judgment in time has a preclusive effect that "extends to all rights the original plaintiff had 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'" *Petro-Hunt L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). All claims or defenses are "henceforth merged or extinguished." *Agrilectric Power Partners, Ltd*, 20 F.3d at 665.

This is exactly what has happened here. The Mustaphas now seek to bring twenty-five claims against Wells Fargo and HSBC—all of which directly relate to the Property, its financing, and subsequent foreclosure. In fact, portions of the pleadings in this case are lifted directly from the Mustaphas' previously adjudicated claims.[31]

Dismissal under Rule 12(b)(6) on *res judicata* grounds may be appropriate when the elements of *res judicata* are apparent on the face of the pleadings. *See Kan. Reinsurance Co. v. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994). In ruling on such a motion, "[t]he court may consider documents attached to or incorporated in the

---

[31] *Compare* Civil Action No. 4:12-cv-01924, Dkt. 1 *with* Bankruptcy Adversary Proceeding Case No. 10-3265, Dkt 1.

complaint and matters of which judicial notice may be taken." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.,* 336 F.3d 375, 379 (5th Cir. 2003); *see also Norris v. Hearst Trust,* 500 F.3d 454, 461 n. 9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."); *see also Cinel v. Connick,* 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record."). In addition, a judge may take judicial notice of the record in a prior related proceeding over which he presided. *See Santibanez v. Wier McMahon & Co.,* 105 F.3d 234, 240 (5th Cir. 1997).

Mindful that the Mustaphas are proceeding *pro se*, this Court has taken care to construe their pleadings liberally. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007) (holding that a document filed *pro se* is "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). "Although a court should review *pro se* pleading less stringently and offer plaintiffs leave to amend their complaints, '[a]t some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit.'" *Smart v. Holder,* 368 Fed. App'x. 591, 594, 2010 WL 759164, 2 (5th Cir. 2010). Such is the case at hand—even when their pleadings are liberally construed, the Mustaphas' new lawsuit raises only those matters already adjudicated—the Property, its financing, and subsequent foreclosure.[32]

---

[32] Civil Action No. 4:12-cv-01924, Dkt. 1

This is a textbook example of *res judicata* barring claims and preserving the finality of the prior judgment. The Mustaphas have had a fair opportunity to make their case, and they received a final judgment. If they disagreed with the previous judgment of this Court, or myriad other judgments disposing of their claims, "the proper remedy for an allegedly erroneous judgment is direct appeal to the proper court, not an attempt to avoid the *res judicata* effect of that judgment in another suit against the same party for the same cause of action." *Proctor & Gamble Co.*, 376 F.3d at 499. The Mustaphas did not appeal the previous judgment of this Court, and this Court may not treat the current suit as an appellate proceeding. Accordingly, the Court finds that the Mustaphas' claims are barred by *res judicata*.

### III. The *Rooker-Feldman* Doctrine

Second, HSBC Bank contends that the Mustaphas' claims in this suit are barred by the *Rooker-Feldman* Doctrine. Under this doctrine, "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Weaver v. Texas Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011); *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994). The doctrine is confined to cases in which the plaintiff lost in state court and now brings the same claims for the purpose of "inviting district court review and rejection of the state court's judgments." *Skinner v. Switzer*, 131 S.Ct. 1289, 1297, 179 L. Ed. 2d 33 (2011). A state court judgment is attacked for purposes of *Rooker-Feldman* "when the [federal] claims are 'inextricably intertwined' with a challenged state court judgment," *Weaver*, 660 F.3d at 904, or where the losing party in a state court action seeks "what in substance would be appellate review of the state

judgment." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06, 114 S. Ct. 2647, 129 L. Ed. 2d 775 (1994); *United States v. Shepherd*, 23 F.3d 923, 924-25 (5th Cir. 1994) (finding *Rooker-Feldman* doctrine barred a federal district court's invalidation of state judgment confirming validity of foreclosure sale).[33]

HSBC Bank reiterates that a litany of state courts previously awarded judgment against the Mustaphas, and that HSBC received a final judgment from the Court of Appeals for the Fourteenth District of Texas on January, 31, 2012, ultimately closing the case. However, because this case is easily disposed of on the basis of *res judicata*, this Court declines to reach HSBC's arguments under *Rooker-Feldman*, despite the impressive list of judgments against the Mustaphas in state court.

### IV. Motion to Declare Plaintiffs Vexatious Litigants

The role of the federal courts is unique and sacrosanct, providing citizens with a forum in which to air their grievances—we consider cases in which "the question is difficult, [and] the consequences weighty." *Zivotofsky ex rel. Zivotofsky v. Clinton*, 132 S.Ct. 1421, 1432-1433 (2012). "Questions may occur which we would gladly avoid; but we cannot avoid them. All we can do is, to exercise our best judgment, and conscientiously to perform our duty." *Id.* (citing *Cohens v. Virginia,* 6 Wheat. 264, 404, 5 L.Ed. 257 (1821)). A citizen's right to petition courts for assistance in resolving legal disputes is a fundamental and basic right in our society. *See, e.g. Borough of Duryea, Pa.*

---

[33] The doctrine, however, is narrowly tailored. It does not preclude federal jurisdiction over an "independent claim," even if the claim denies the legal conclusion reached by the state court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005).

13

*v. Guarnieri*, 131 S.Ct. 2488, 2494 (2011) ("[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government."); *Tennessee v. Lane*, 541 U.S. 509, 523, 124 S.Ct. 1978, 1988 (2004) ("The Due Process Clause guarantees a 'meaningful opportunity to be heard' to civil litigants in judicial proceedings"). These principles are inviolable and remain foremost in this Court's analysis.

However, when parties begin abusing the opportunities afforded by our legal system, valuable time and resources are deflected from cases in need of attention. "The goal of fairly dispensing justice . . . is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous requests. *Pro se* petitioners have a greater capacity than most to disrupt the fair allocation of judicial resources because they are not subject to the financial considerations—filing fees and attorney's fees—that deter other litigants from filing frivolous petitions." *In re Whitaker*, 513 U.S. 1, 3, 115 S.Ct. 2, 3 (1994). While the legal system serves many functions, it is not a vehicle for harassing actions at the expense of others.

When such conduct does occur, federal courts have an inherent power to "sanction a party or attorney . . . to achieve the orderly and expeditious disposition of their dockets." *Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 411 (5th Cir. 1996); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) ("A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."). This power includes imposing sanctions against vexatious litigants—even those appearing *pro se*—for raising a patently frivolous

legal argument or continuing to engage in meritless litigation. *See Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986) ("That his filings are *pro se* offers . . . no impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.").

However, the threshold for exercising this inherent power is high—sanctions must be "tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Farguson,* 808 F.2d at 360. In other words, sanctions are warranted only when the party is acting in bad faith. *See Terra v. Rabo Agrifinance, Inc.*, 2012 U.S. App. LEXIS 26291 (5th Cir. 2012) ("Raising a patently frivolous legal argument and threatening continued meritless litigation is the definition of bad faith").

Here, the Mustaphas have filed numerous lawsuits repeatedly asserting claims that they *should know* have already been resolved against them by both federal and state courts. However, the Court declines to impose sanctions against them at this time. The Court gives the Mustaphas the benefit of doubt that they have brought these numerous claims in good faith and not for purposes of harassment or to waste judicial resources. *The presumption of good faith ends with this lawsuit.* The Mustaphas should not be encouraged by this Court's decision not to sanction them for filing the present action. Any future lawsuits filed on the very same subject matter of this case will very likely result in serious sanctions being imposed against them.

15

## Conclusion

The record of this proceeding and others demonstrate that the Mustaphas' case has been fully adjudicated. For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED** with prejudice. The Court **DENIES** Defendants' Motion to Declare Plaintiffs' Vexatious Litigants at this time.

**Signed at HOUSTON, TEXAS, on February 20, 2013.**

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　**George C. Hanks, Jr.**
　　　　　　　　　　　　　　　　**United States Magistrate Judge**